**STATE of Tennessee, ex rel. Leonard Jasper YOUNG and Johnny Wesley Heflin, Appellants,**

**v.**

**James ROSE, Warden, et al., Appellees.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 18, 1984.

Permission to Appeal Denied by Supreme Court April 2, 1984.

James L. Weatherly, Jr., Public Defender, Nashville, for appellants.

William P. Purcell, Asst. Public Defender, Nashville, for appellant, Young.

Suellen Wideman, Asst. Public Defender, Nashville, for appellant, Heflin.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., David Raybin, Asst. Dist. Atty. Gen., Nashville, for appellees.

OPINION

SCOTT, Judge.

The appellants filed petitions for the writ of habeas corpus challenging this state's authority to transfer them to Kentucky under the Interstate Compact on Detainers for trial on pending charges in that state. They contend that the Governor of Tennes-

see must personally review Kentucky's request for their transfer. Mr. Heflin also contends that before his transfer can be approved the Governor must personally consider the fact that there is another criminal charge pending against him in Tennessee. The trial judge considered these contentions and denied the writ. The same issues and arguments are presented to this Court on appeal.

The appellants are inmates at the Tennessee State Penitentiary. They have also been indicted in McCracken County, Kentucky for kidnapping, first degree rape, theft by unlawful taking and also for being first degree persistent felony offenders. The Commonwealth of Kentucky, seeking the temporary return of the appellants to that state to stand trial on these charges, filed detainers against them under the Interstate Compact on Detainers. Ky.Rev. Stat. § 440.450, et seq., TCA § 40–31–101, et seq. The appellants requested a hearing and filed their petitions for the writ of habeas corpus to contest their transfers.

At the hearing on the petitions Donna Blackburn Vaughn, the Administrator of the Interstate Compact on Detainers in the office of Governor Lamar Alexander, testified concerning her duties and procedures. She was appointed by the Governor to act and does act in his behalf on requests for temporary custody pursuant to the Compact. She testified that even though her standard letter to the inmates stated that the Governor had considered the request, to her knowledge the Governor did not have any personal knowledge of the detainers lodged against these appellants. When she made her decision not to oppose Kentucky's request for temporary custody, she was not aware that Mr. Heflin had been indicted in Tennessee for escape.

To facilitate the important duties of transferring individuals into and out of this state for trial on criminal charges, and to bring uniformity to the procedures among the several states, Tennessee, like its sister states, has adopted the Uniform Criminal Extradition Act, TCA § 40–9–101, et seq., and the Interstate Compact on Detainers,

TCA § 40–31–101, et seq. The chief difference between the Extradition Act and the Compact on Detainers is that the Compact procedures result in only a temporary transfer to the receiving state. TCA § 40–31–101, Article IV(a), Article V(a). Under the Compact, prisoners, as well as state officials, can set the procedures in motion. TCA § 40–31–101, Article III(a).

■ On the other hand, the Extradition Act addresses itself largely to fugitives who are not in custody. TCA § 40–9–109. In order to set the Extradition Act in motion, the Governor is required to sign a warrant of arrest for the fugitive. TCA § 40–9–116. The Governor's warrant authorizes the person to whom it is directed, with the assistance of "all sheriffs and other peace officers" to arrest the accused "at any place where he may be found within the state" and to deliver the accused to the duly authorized agent of the demanding state. TCA § 40–9–118. The Governor must pass upon the questions of whether the person demanded is substantially charged with a crime in the demanding state and whether the person demanded is a fugitive from that state. The Governor alone is clothed with power to make these determinations and personally sign the warrant. *State, ex rel. Redwine v. Selman,* 157 Tenn. 641, 12 S.W.2d 368, 370 (1928).

The appellants contend that the requirement that the Governor personally review requests for custody under the Extradition Act also applies to transfers under the Interstate Compact on Detainers. As authority for this proposition, they rely on *Cuyler v. Adams,* 449 U.S. 433, 450, 101 S.Ct. 703, 712, 66 L.Ed.2d 641 (1981). In *Cuyler,* a New Jersey prosecutor obtained temporary custody of a Pennsylvania inmate under the Interstate Agreement on Detainers. The inmate was not granted a pre-transfer hearing and he filed a civil rights suit alleging that he was denied due process and equal protection of the law. He argued that had he been transferred under the Extradition Act, he would have been entitled to a hearing. The Supreme

Court noted that under that Act prisoners are explicitly granted the right to counsel, the right to a hearing and the right to apply for the writ of habeas corpus to challenge the custody request. A prisoner is also permitted a reasonable time to apply for the writ. Similar explicit provisions are not found in the Detainer Act. *Id.*, 101 S.Ct. at 705–706, 709. *See:* TCA § 40–9–119.

The United States Supreme Court held, by statutory interpretation and without reaching the constitutional claims, that the Detainer Agreement preserved whatever rights an inmate would have had under the Extradition Act. The court's finding was based on Article IV(d) of the Interstate Compact, which provides:

Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending state has not affirmatively consented to or ordered such delivery. TCA § 40–31–101, Article IV(d).

Thus, as a matter of federal law, prisoners transferred pursuant to the Interstate Agreement on Detainers are not required to forfeit any pre-existing rights they may have under state or federal law. *Id.*, 101 S.Ct. at 712.

The United States Supreme Court specifically referred to the appellants' claims in *Cuyler v. Adams* as follows:

(T)he one ground for contesting a transfer that paragraph (d) explicitly withholds from the prisoner—that the transfer has not been affirmatively approved by the Governor—is a ground that the Extradition Act expressly reserves to the prisoner. It is surely reasonable to conclude from the elimination of this ground in the Detainer Agreement that the drafters meant the Detainer Agreement to be read as not affecting any rights given prisoners by the Extradition Act that are not expressly withheld by the Detainer Agreement. As the Court of Appeals concluded, "the fact that Article IV(d) does specifically refer to one minor procedural feature of the extradition process which is to be affected suggests forcefully that the other aspects, particularly those furnishing safeguards to the prisoner, are to continue in effect". 101 S.Ct. at 711.

In addition to the language contained in Article IV(d) of the Compact, we note that the Compact uses the term "appropriate authority", while the Extradition Act uses the term "governor". The Compact authorizes each state to designate an officer to administer its provisions. TCA § 40–31–101, Article VII. Pursuant to this article, the legislature has granted the Governor power to designate a "central administrator of and information agent for" the Compact. TCA § 40–31–107.

██ The clear intent of the Interstate Compact on Detainers is that the administrator be empowered to act on behalf of the State of Tennessee in all matters relating to the Compact and to withhold from the prisoners the right to personal review by the Governor. Hence, the appellants are not entitled to such review.

██ Likewise, Mr. Heflin is not entitled to have the Governor personally consider whether there are criminal charges pending against him in this state, as he must do under TCA § 40–9–115, a section of the Extradition Act. To overlay the Interstate Compact on Detainers with every "minor procedural feature" of the Extradition Act would emasculate the Interstate Compact on Detainers and render it a nullity. Furthermore, pursuant to the Compact, Mr. Heflin will be deemed to remain in the custody of and subject to the jurisdiction of Tennessee during the time that he is in the temporary custody of the Kentucky authority. TCA § 40–31–101, Article V(g). By transferring temporary custody, Tennessee will not surrender jurisdiction over Mr. Heflin for the escape charge pending against him.

The judgment of the trial court is affirmed. The stay order enjoining transfer

pursuant to the Interstate Compact on Detainers pending appeal is dissolved, and the State may proceed with the transfer of the appellants to the State of Kentucky.

O'BRIEN and DUNCAN, JJ., concur.